IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RONALD D. REHER, )
)
Plaintiff, )
) Civil Action No.: 09 C 2801
v. )
) Suzanne B. Conlon, Judge
FRANK VIVO and MARILYN GABINSKI, )
each in his or her individual capacity, )
)
Defendants. )
)

## MEMORANDUM OPINION AND ORDER

Ronald D. Reher brought a civil rights complaint against Lombard Police Officers Frank Vivo and Marilyn Gabinski, alleging false arrest under 42 U.S.C. § 1983 and malicious prosecution in violation of state law. The court dismissed Reher's malicious prosecution claim as time-barred. Minute Order, Dkt. No. 17 (August 10, 2009). Defendants move for summary judgment on the false arrest claim. For the reasons stated below, the motion is granted.

### I.    Local Rule 56.1

Local Rule 56.1 provides detailed instructions for filing and responding to summary judgment motions. The purpose is to assist the court in its summary judgment determination. *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000). Both parties have failed to comply with the dictates and spirit of Local Rule 56.1. Defendants cite to portions of the record in support of their Local Rule 56.1(a)(3) statement of facts when, in some instances, the cited portions do not support the asserted fact. Reher's responses often contain factual assertions more appropriately set forth in a Local Rule 56.1(b)(3)(C) statement

of additional facts.[1] The present motion turns on issues of probable cause and qualified immunity, yet many of the facts set forth in defendants' Local Rule 56.1(a)(3) statement are immaterial to these issues. The manner in which defendants present their statement of facts makes it difficult to determine the chronology of events on the date of arrest. *See Bordelon*, 233 F.3d at 527 (local rules governing summary judgment "assist the court by organizing the evidence"). Nevertheless, the court is able to identify the material facts and resolve the summary judgment motion.

## II. Background

During the 1990s, Reher was involved in a romantic relationship with Ezeldra Outlaw. Def. Ex. 2: Reher Dep. Tr. at 16-19. Their daughter, Ashley, was born in 1990. *Id.* at 19-20. For several months in 1997, Reher shared an apartment with Outlaw and Ashley at 1155 South Finley Road in Lombard, Illinois (the significance of this address will be apparent shortly). *Id.* at 16, 18. Reher and Outlaw ended their relationship that same year. *Id.* at 18, 21. Between 1997 and 2003, Outlaw obtained two or three orders of protection against Reher; he was charged with violating those orders on several occasions. Def. Ex. 2: Reher Dep. Tr. at 19, 24-25. Shortly after the relationship ended, Reher was arrested on a stalking charge after he was seen across the street from Outlaw's apartment. *Id.* at 87. Reher was convicted of violating an order of protection after he kicked down Outlaw's door at 1155 South Finley. *Id.* at 25-26, 81-82. Besides Outlaw, Ashley and another child were in the apartment at the time. *Id.* at 81. Prior to May 2007, Reher believes he was arrested three times for incidents

---

[1] Defendants moved to strike portions of Reher's Local Rule 56.1 responses, as well as his statement of additional facts. Dkt. 45. The court denied the motion as a drastic remedy. Minute Order, Dkt. 47 (March 25, 2010).

2

arising out of his relationship with Outlaw. *Id.* at 85-86. By May 2007, it had been about four years since Reher last saw Outlaw and about eight years since he saw their daughter, Ashley. *Id.* at 19-20, 24.

On May 7, 2007, Reher rode his bicycle from his home in Carol Stream, Illinois to the Churchill Woods and Glen Oaks Forest Preserves in DuPage County, Illinois to fish and hike. Def. Facts ¶ 6; Def. Ex. 2: Reher Dep. Tr. at 33-35. In the late afternoon, Reher continued on his bicycle to Edson Park in Lombard, Illinois. Def. Facts ¶ 7; Def. Ex. 2: Reher Dep. Tr. at 38. Edson Park is a small neighborhood park with some playground equipment and a basketball court. Def. Facts ¶ 8. It is located behind two apartment buildings, one of them 1155 South Finley Road. *Id.* Besides his bicycle, Reher had with him a bait bucket, fishing pole, video camera, binoculars, and a folding knife with a six-inch blade. Def. Facts ¶ 9. He sat on a park bench directly behind 1155 South Finley, drawing the attention of children and adults in the park, some of whom gave Reher strange looks. *Id.* ¶¶ 10-11. Although Reher claims he did not recognize her at the time, one of those individuals was his estranged teenage daughter, Ashley. Pl. Resp. ¶ 12; Def. Ex. 2: Reher Dep. Tr. at 39-40.

After sitting in the park for nearly thirty minutes, Reher was approached by Outlaw. Def. Facts ¶ 13. As he saw her come near, Reher turned on his video camera to film the incident. *Id.* ¶ 14. Reher later testified, "I was pretty much just going to cover myself to make sure, you know, if she said I threatened her, I had to have proof that I didn't." Def. Ex. 2: Reher Dep. Tr. at 43. The confrontation quickly grew heated, as Outlaw grabbed the video camera from Reher's hands and threw it to the ground repeatedly. Def. Facts ¶ 15; Def. Ex. 2: Reher Dep. Tr. at 45. She took the broken camera and ran across the adjacent parking lot.

3

Def. Ex. 2: Reher Dep. Tr. at 45-47. A number of people, mostly children, grabbed hold of Reher's bicycle to prevent him from leaving. Def. Facts ¶ 16; Pl. Resp. ¶ 16. An unidentified adult told Reher, "I'm not going to give you the bike back because . . . you'll get on it and ride off before the police get here and stuff." Def. Ex. 2: Reher Dep. Tr. at 47. One of the witnesses contacted the Lombard Police Department. Def. Facts ¶ 20.[2]

Five police officers were dispatched to Edson Park – defendant Officer Frank Vivo, defendant Sergeant Marilyn Gabinski, as well as Officers Terry Evoy, Joseph Statkus, and Paula Krupiczowicz. Def. Facts ¶ 27. Vivo arrived on scene to find a group of 20-25 visibly upset people near Officer Evoy. Id. ¶ 29. Vivo spoke with Officer Evoy, who advised him the residents were angry because a man was videotaping their children in Edson Park.[3] Id. ¶ 30. Arriving separately, Gabinski heard angry comments from the crowd of residents suggesting that children were being photographed in the park. Id. ¶¶ 31-32. The responding officers split up and began interviewing people to learn what had transpired. Def. Facts ¶ 25; Pl. Resp. ¶ 25.

Although there is some confusion as to which officers interviewed particular witnesses, the parties do not dispute that Gabinski spoke with Crichandra Llorens, a witness, prior to Reher's arrest. Def. Facts ¶ 33. Llorens, visibly upset at the time, advised Gabinski

---

[2] The parties dispute the identity of the person who called the police. Defendants believe the caller's identity is unknown, while Reher claims the caller was Crichandra Llorens, a witness to the incident. Def. Facts ¶ 20; Pl. Resp. ¶ 20. Llorens, however, testified she did not call the police. Def. Ex. 3: Llorens Dep. Tr. at 17. The dispute is immaterial for summary judgment purposes.

[3] Reher insists he did not turn on the camera until Outlaw approached him on the park bench. Pl. Resp. ¶ 18. Even so, this is not a material dispute. At issue is whether defendants had probable cause to arrest, and Reher does not dispute that numerous individuals advised the officers that he was videotaping children in the park. Def. Facts ¶¶ 29-30, 32, 34.

that her children were playing in Edson Park and that she thought Reher was "probably, like, a [pervert] or something out there looking at the children." Def. Facts ¶¶ 33, 43. There is also no dispute that, prior to Reher's arrest, some of the officers, including Gabinski, spoke with Outlaw. *Id.* ¶¶ 34, 38. Outlaw told the officers that Reher had been videotaping Ashley and other children in the park, causing her and other residents to become alarmed and disturbed. *Id.* ¶ 34. It is unclear from the record whether Gabinski or Vivo heard this particular comment.

Gabinski and Vivo questioned Reher about his reason for being in Edson Park. Def. Facts ¶¶ 36-37, 47. According to defendants, Reher stated he was "videotaping nature." Def. Facts ¶ 48. Reher claims he said no such thing. Pl. Resp. ¶ 48. The substance of Reher's explanation remains disputed, but the parties agree that, whatever his explanation, the officers did not believe him. Def Facts ¶¶ 47, 51. While on scene, Gabinski remembered previous allegations Outlaw lodged against Reher. Def. Facts ¶ 49, 65. Having been involved in numerous investigations regarding Reher's relationship with Outlaw, Gabinski knew the history of battery allegations and violations of orders of protection. *Id.*; Pl. Resp. ¶ 65; Def. Ex. 5: Gabinski Dep. Tr. at 21-24, 36-42. Gabinski also knew Reher allegedly: (1) harassed Outlaw by telephone; (2) threw a rock through Outlaw's window; (3) and distributed nude photographs of Outlaw in the courtyard of her building. Pl. Resp. ¶ 65; Def. Ex. 5: Gabinski Dep. Tr. at 22-24, 36-42.

In light of this history, Gabinski expressed her skepticism of Reher's explanation. Def. Facts ¶ 51. Upset at Gabinski's tone and implication that he was lying, Reher stated "I don't want to talk to that bitch." *Id.* ¶ 52. Vivo then handcuffed Reher and placed him in a

5

squad car. *Id.* ¶¶ 55, 59. On the way to the station, Vivo advised Reher that he was under arrest for disorderly conduct. *Id.* ¶ 60. The case was later dismissed. Compl. ¶ 25; Answer ¶ 25.

### III. Legal Standard

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Defendants have the initial burden of demonstrating they are entitled to summary judgment. *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). Once they meet this burden, Reher must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). A factual issue is material only if its resolution might change the suit's outcome under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to Reher. *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002). A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in Reher's favor. *Anderson*, 477 U.S. at 248.

### IV. Analysis

Reher alleges he was arrested on May 7, 2007 without probable cause, in violation of his Fourth Amendment right to be free from unreasonable seizures. Defendants move for summary judgment, arguing there was probable cause to justify Reher's arrest for disorderly conduct. Alternatively, defendants claim they are entitled to qualified immunity.

6

Probable cause is an absolute bar to a false arrest claim under 42 U.S.C. § 1983. *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009). Police officers are also entitled to qualified immunity for an arrest so long as their conduct does not violate clearly established statutory or constitutional rights that would be known to a reasonable person. *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001) (citation omitted). Reher bears the burden of demonstrating the existence of a clearly established constitutional right. *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). The unlawfulness of defendants' conduct must be apparent in light of pre-existing law. *Miller v. Jones*, 444 F.3d 929, 934 (7th Cir. 2006). Reher must show, on some level, that a violation of this right has been found in factually similar cases, or that the violation was so clear that reasonable police officers would have known their actions violated his rights even in the absence of a factually similar case. *Lee v. Young*, 533 F.3d 505, 512 (7th Cir. 2008).

Whether defendants had probable cause to arrest Reher and whether they are entitled to qualified immunity are closely related questions, although qualified immunity provides defendants with an additional layer of protection against civil liability if the court determines a reasonable officer could have mistakenly believed that probable cause existed. *Williams v. Jaglowski*, 269 F.3d 778, 781 (7th Cir. 2001). Qualified immunity leaves "ample room for mistaken judgments" by police officers. *Payne v. Pauley*, 337 F.3d 767, 776 (7th Cir. 2003) (citation omitted). A civil case "should not be permitted to go to trial if there is *any* reasonable basis to conclude that probable cause existed." *Thompson v. Wagner*, 319 F.3d 931, 935 (7th Cir. 2003) (citation omitted) (emphasis in original). With these standards in mind, the court turns to consideration of defendants' summary judgment motion.

Probable cause exists where an officer reasonably believes, in light of the facts and circumstances known to him at the time of arrest, that the suspect committed an offense. *Shipman v. Hamilton*, 520 F.3d 775, 778 (7th Cir. 2008). The officer need not have evidence sufficient to support a conviction, nor even evidence demonstrating it is more likely than not that the suspect committed a crime. *United States v. Mounts*, 248 F.3d 712, 715 (7th Cir. 2001) (citation omitted). Probable cause exists if the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part. *Id.* (citation omitted). It is evaluated on the facts "as they would have appeared to a reasonable person *in the position of the arresting officer* – seeing what he saw, hearing what he heard." *Mahoney v. Kesery*, 976 F.2d 1054, 1057 (7th Cir. 1992).

Defendants contend this case is governed by the "collective knowledge" doctrine, which provides that the arresting officer need not have personal knowledge of the facts constituting probable cause if he is reasonably acting at the direction of another officer or police agency. *Tangwall v. Stuckey*, 135 F.3d 510, 517 (7th Cir. 1998). The doctrine is applied in two situations: (1) when information from one jurisdiction is relayed to officers or agencies in another; and (2) when officers communicate with each other at the scene of an arrest. *United States v. Parra*, 402 F.3d 752, 764 (7th Cir. 2005). In this case, there is no dispute that five officers were present at the scene of Reher's arrest and that they split up to interview Reher and other witnesses. It is also undisputed that Vivo was present for and heard the conversation between Reher and Gabinski. However, aside from Vivo's conversation with Officer Evoy, the extent of communications between the officers is not established in the record. The court will impute knowledge from one officer to another only where it is clear

8

that the officers communicated with each other. *United States v. Ellis*, 499 F.3d 686, 690 (7th Cir. 2007).

Defendants maintain there was probable cause to arrest Reher for disorderly conduct.[4] The court agrees. Under Illinois law, "[a] person commits disorderly conduct when he knowingly . . . [d]oes any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1(a)(1).[5] Three elements are required: the person's conduct must (1) be unreasonable; (2) alarm or disturb another; and (3) threaten to provoke or provoke a breach of the peace. *Biddle v. Martin*, 992 F.2d 673, 677 (7th Cir. 1993). The disorderly conduct statute "embraces a wide variety of conduct serving to destroy or menace the public order and tranquility." *People v. Brant*, 916 N.E.2d 144, 153 (Ill. 2009) (citation omitted). Whether particular conduct is disorderly depends not only on the conduct itself, but on its unreasonableness in relation to the surrounding circumstances. *Biddle*, 992 F.2d at 677.

The issue is not whether Reher actually committed the offense of disorderly conduct, but whether reasonable officers in defendants' positions could have had probable cause to believe Reher engaged in disorderly conduct. Reher is correct that videotaping in public, by

---

[4] The record indicates Reher was initially arrested for attempting to assault Gabinski after she questioned his veracity. Def. Ex. 4: Vivo Dep. Tr. at 25-27; Def. Ex. 5: Gabinski Dep. Tr. at 44-50. Defendants make no attempt to justify Reher's arrest on this basis; the argument is therefore waived. *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736 (7th Cir. 2006).

[5] Reher was charged under a different subsection of Illinois' disorderly conduct statute, 720 ILCS 5/26-1(a)(5). The issue in false arrest cases is whether a reasonable officer, with the same information available to the arresting officer, would have had probable cause to arrest the suspect *for any offense*. *Williams v. Rodriguez*, 509 F.3d 392, 399 (7th Cir. 2007). Reher does not dispute that the propriety his arrest should be considered in relation to the disorderly conduct statute cited above, rather than the one under which he was charged.

itself, may not be enough to justify an arrest for disorderly conduct. *Cooper v. City of Waukegan*, No. 86 C 7051, 1987 WL 10956 (N.D. Ill. Apr. 22, 1987) (Getzendanner, J.). But courts have upheld disorderly conduct arrests where the videotaping was accompanied by other suspicious circumstances. *Graham v. Village of Niles*, No. 02 C 4405, 2003 WL 22995159, *6-7 (N.D. Ill. Dec. 16, 2003) (Hibbler, J.) (probable cause existed when suspect surreptitiously videotaped women in a parking lot); *People v. Blair*, 748 N.E.2d 318 (Ill. 2001) (defendant arrested for disorderly conduct after videotaping children at a zoo).

It is unclear whether it was Vivo or Gabinski who made the decision to arrest Reher, though it is undisputed that Vivo took him into custody. Def. Facts ¶¶ 55, 61-62. The uncertainty is immaterial. Resolving all genuine factual disputes in Reher's favor, probable cause existed to justify his arrest by either Vivo or Gabinski. Vivo arrived at the scene to find nearly two dozen distraught residents screaming about a man videotaping their children in Edson Park. He spoke briefly with Officer Evoy, who reiterated the residents' complaints. Vivo also overheard the discussion between Reher and Gabinski regarding Reher's reason for being in Edson Park; he also heard Gabinski express her disbelief. He took Reher into custody only after he abruptly refused to continue speaking with Gabinski. The totality of the circumstances were sufficient to give Vivo probable cause to believe that Reher had engaged in disorderly conduct. The record does not establish that Vivo knew, prior to Reher's arrest, of the history between Reher and Outlaw. Even so, Vivo was aware of the chaos at the scene and he was entitled to rely on information provided by the residents. *Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 680 (7th Cir. 2007).

10

Gabinski was also aware of the alarming effect Reher's alleged conduct had on the people in Edson Park that afternoon, including Outlaw and Llorens. More importantly, she knew of Reher's turbulent history with Outlaw, including past allegations of violence, harassment, and intimidation. An officer may rely on knowledge of past interactions between a suspect and a complainant when determining whether probable cause exists to justify an arrest. *Gower v. Vercler*, 377 F.3d 661, 669 (7th Cir. 2004). Because a prudent police officer might have believed Reher committed the crime of disorderly conduct, defendants are entitled to summary judgment. *See Mustafa v. City of Chicago*, 442 F.3d 544, 547-48 (7th Cir. 2006) (probable cause existed to arrest plaintiff for disorderly conduct when officer arrived at scene to find "'commotion' and 'agitation' in progress, with [plaintiff] at its center").

Even assuming that defendants did not have probable cause for the arrest, the qualified immunity doctrine would still entitle them to summary judgment. Officers are afforded immunity for reasonable mistakes as to the legality of their actions. *Leaf v. Shelnutt*, 400 F.3d 1070, 1080 & n. 8 (7th Cir. 2005). Disorderly conduct almost defies definition. *Biddle*, 992 F.2d at 677. Courts have found a broad range of behavior falls within the scope of the offense, including the surreptitious videotaping of others. *See Graham*, 2003 WL 22995159, at *6-7 (collecting cases). Five officers dispatched to Edson Park were faced with an angry crowd of residents claiming Reher was videotaping their children. Reher claims (and the court must accept) that he was not. But there is no dispute that Reher's presence in the park led to those accusations as well as a general disturbance that required police involvement. Reasonable officers could have mistakenly believed that probable cause existed. The facts known to defendants at the time of Reher's arrest were sufficient to give them "arguable

probable cause," which entitles them to qualified immunity. *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998).

## CONCLUSION

For the foregoing reasons, the motion for summary judgment is granted.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

April 12, 2010